

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ATLANTIC MARINE CONSTRUCTION
COMPANY, INC.,

     Plaintiff,

     v.

CHRISTOPHER J. McGRATH; and
C&C CONTRACTORS, LLC,

     Defendants.

Civil Action No. 2:15cv 508

## COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff Atlantic Marine Construction Company, Inc. ("AMC") complains as follows against defendants Christopher J. McGrath ("McGrath") and C&C Contractors, LLC ("C&C"):

### Nature of the Action

1.  AMC sues for injunctive, monetary, and other relief to enjoin and remedy McGrath's and C&C's unauthorized access to AMC's computer and servers and misappropriation of its trade secrets in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2) and (g), the Virginia Computer Crimes Act, Va. Code §§ 18.2-152.1, *et seq.*, and the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336, *et seq.*, and their trespass to chattels.

### Parties

2.  AMC is a Virginia corporation with its principal place of business in Virginia Beach, Virginia.

3.  McGrath is an individual residing in Alabama.

4. C&C is an Alabama limited liability company with its principal place of business in Notasulga, Alabama.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331 because it arises out of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

6. This Court has supplemental jurisdiction of AMC's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the Computer Fraud and Abuse Act claim that they form part of the same case or controversy.

7. In the alternative, this Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states.

8. This Court has personal jurisdiction of McGrath and C&C pursuant to Va. Code § 8.01-328.1(A)(3) and (B) by virtue of their tortious conduct in knowingly and intentionally accessing, without authorization, AMC's computer and servers, which are located within this judicial district. Moreover, this Court has personal jurisdiction over McGrath by virtue of his substantial contacts with this forum, including his residence and employment in Virginia Beach, Virginia at the time of his employment with AMC and at least some of his tortious acts.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here and a substantial part of the property that is the subject of this action is situated here.

## Facts

10. AMC performs construction work pursuant to contracts with the federal government throughout the United States.

11. AMC is performing construction and maintenance work at Fort Benning, Georgia on a single award task order contract ("SATOC") with U.S. Department of the Army ("Army").

12. AMC employed McGrath as its Vice President, Construction, until August 11, 2015, when AMC terminated McGrath's employment.

13. While employed by AMC, McGrath worked at its Virginia Beach office and resided in Virginia Beach. Since his employment was terminated, he has moved to Alabama.

### McGrath's Unauthorized Installation of Chrome Remote

14. On or about February 16, 2015, while still employed by AMC, McGrath installed an application, Google Chrome Remote Desktop ("Chrome Remote"), on an AMC desktop computer ("Computer") located at AMC's headquarters in Virginia Beach.

15. As described by Google Chrome on www.chrome.google.com/webstore, Chrome Remote "allows users to remotely access another computer through Chrome browser or Chromebook. Computers can be made available on a short-term basis for scenarios such as ad hoc remote support, or on a more long-term basis for remote access to ... applications and files." Users log into Chrome Remote using a Gmail address.

16. AMC did not authorize McGrath to install Chrome Remote on any AMC computer and was unaware that he had done so. McGrath violated AMC policy in installing Chrome Remote without AMC's authorization.

3

17. The Computer is connected to AMC's servers ("Servers").

18. AMC uses its Computer and Servers in interstate commerce and communication, specifically, as part of its business as a contractor for the United States Government on military bases throughout the United States.

**AMC's Trade Secrets**

19. AMC stores its confidential and proprietary business information and trade secrets (collectively, "Trade Secrets") on its Servers.

20. AMC's Trade Secrets include:

   a. proposal sheets detailed in accordance with specifications of the Army at Fort Benning;

   b. proposal sheets designed in accordance with the U.S. Army Corps of Engineers guidelines;

   c. formulas that AMC uses to apply labor, material, and equipment costs, and to assess the application of overhead in a manner that provides it a competitive advantage over its competitors;

   d. AMC's historic design and cost data tailored to specific facility types and users derived from contract work with the Army and the U.S. Department of Defense, providing AMC with a competitive advantage over its competitors;

   e. data regarding AMC's proposals to the Army for work at Fort Benning and elsewhere;

   f. data regarding AMC's current and past bids for Army and other work with federal and private sector customers;

4

g.  information regarding AMC's contracts with its customers, including the Army;

h.  AMC's actual historic cost data for its various jobs;

i.  confidential information regarding AMC's employees; and

j.  customized databases compiled for AMC's clients, professional vendors, subcontractors, suppliers, and other entities with which AMC does business.

21. AMC invested considerable time and resources to develop the Trade Secrets stored on its Servers. These Trade Secrets are derived from AMC's extensive experience in federal contracting, through which it has learned the best methods of pricing its bids and presenting its proposals in order to maximize its chances of being awarded work and performing profitably and to the satisfaction of the Army and other government and private sector customers.

22. The Trade Secrets are critical for AMC's success in that they enable AMC to compete for work at Fort Benning and elsewhere.

23. AMC endeavors to maintain the secrecy of its Trade Secrets. AMC restricts access to the Trade Secrets to its employees, who are subject to non-disclosure policies, and stores the Trade Secrets on its Servers, which AMC attempted to protect from intrusion with security software and by promptly terminating access for former employees.

24. The Trade Secrets are valuable to AMC because they are not generally known by, and not readily ascertainable by proper means by, other persons who can obtain economic value from the disclosure or use of the Trade Secrets.

25. Another person—and in particular, another federal contractor such as C&C—could use the Trade Secrets to compete against AMC for federal contract work.

### McGrath's Unauthorized Access to the AMC Computer and Servers

26. Without AMC's knowledge or authorization, McGrath used Chrome Remote to access AMC's Computer and Servers remotely from outside the office after his employment terminated.

27. Each time that McGrath accessed the Computer and Servers, he logged into Chrome Remote using his personal email address, christoper.john.mcgrath@gmail.com.

28. Specifically, McGrath used Chrome Remote to access the Computer and Servers on the following dates and times after his employment terminated:

  a. Wednesday, September 30, 2015, at 10:13:33 a.m., 10:25:50 a.m., and 10:30:50 a.m.

  b. Thursday, October 1, 2015, at 3:30:35 a.m.

  c. Monday, October 12, 2015, at 7:48:05 p.m.

  d. Wednesday, October 14, 2015, at 3:22:28 a.m.

  e. Monday, October 19, 2015, at 10:05:47 a.m.

  f. Tuesday, October 20, 2015, at 8:03:09 a.m.

  g. Thursday, October 22, 2015 at 8:05:00 a.m.

  h. Friday, October 23, 2015, at 8:00:28 a.m.

  i. Saturday, October 24, 2015, at 3:23:31 a.m.

  j. Tuesday, October 27, 2015, at 8:16:34 a.m.

  k. Thursday, October 29, 2015, at 10:36:29 a.m.

  l. Monday, November 2, 2015, at 9:22:26 a.m.

      m. Wednesday, November 11, 2015, at 3:28:15 a.m.

      n. Friday, November 13, 2015, at 8:00:41 a.m.

      o. Tuesday, November 17, 2015, at 8:02:47 a.m.

      p. Thursday, November 19, 2015, at 11:16:16 a.m., 11:16:17 a.m., and
         11:17:02 a.m.

29. On each of the occasions that McGrath accessed the Computer and Servers, he did so without AMC's knowledge or authorization.

30. Upon information and belief, on each of the occasions that McGrath accessed the Computer and Servers, he viewed, copied, and downloaded AMC's Trade Secrets.

### C&C's Activities

31. C&C has hired and now employs McGrath.

32. C&C is also a federal contractor and is participating in a separate SATOC contract which supplies maintenance work at Fort Benning for the Army.

33. C&C is a direct competitor of AMC for work with the Army at Fort Benning and other bases served by the SATOC contracts.

34. The SATOCs under which AMC and C&C perform work are paid by the Army from the same fund. As a result, more work for one contractor necessarily means less work for the other contractor.

35. AMC has more experience in federal contracting than C&C. AMC's Trade Secrets, which reflect that superior experience, are valuable for AMC and their disclosure to C&C gives C&C an unfair competitive advantage.

36. C&C has solicited AMC employees to leave their AMC employment and work for C&C, and has hired McGrath, a former AMC employee. Upon information and

belief, C&C's efforts to recruit AMC employees were attempts to gain access to AMC's Trade Secrets.

37. Upon information and belief, McGrath was acting at the direction of and for the benefit of his employer, C&C, when he accessed AMC's Computer and Servers and misappropriated AMC's Trade Secrets.

38. McGrath was performing C&C's business and acting within the scope of his C&C employment when he accessed AMC's Computer and Servers and misappropriated AMC's Trade Secrets.

39. Upon information and belief, McGrath disclosed AMC's Trade Secrets to C&C and used AMC's Trade Secrets for the benefit of C&C.

40. C&C benefits from the Trade Secrets that it and its employee McGrath misappropriated from AMC.

41. C&C knew or should have known that McGrath misappropriated the Trade Secrets from AMC.

42. McGrath and C&C have been unjustly enriched by their misappropriation of AMC's Trade Secrets.

43. McGrath and C&C acted willfully and maliciously in misappropriating AMC's Trade Secrets.

## COUNT I:
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT

44. AMC incorporates the foregoing paragraphs.

45. McGrath and C&C, through means of interstate communications, intentionally accessed AMC's Computer and Servers without authorization and thereby obtained AMC's Trade Secrets and other information.

8

46. McGrath's and C&C's actions violate the Computer Fraud and Abuse Act, which provides a civil cause of action. 18 U.S.C. § 1030(a)(2)(C), (g).

47. As the result of McGrath's and C&C's actions, AMC has suffered a loss during the past one-year period aggregating in excess of $5,000 in value.

48. These acts by McGrath and C&C have caused, and will continue to cause, AMC to suffer irreparable harm unless injunctive relief is granted.

## COUNT II:
## VIOLATION OF THE VIRGINIA COMPUTER CRIMES ACT

49. AMC incorporates the foregoing paragraphs.

50. McGrath and C&C, with malicious intent, used a computer or computers to make an unauthorized copy of computer data residing in, communicated by, or produced by a computer or computer network.

51. McGrath's and C&C's actions violate the Virginia Computer Crimes Act, which provides a private cause of action. Va. Code §§ 18.2-152.4, -152.12.

52. McGrath and C&C have injured and continue to injure AMC through their unauthorized access of AMC's Computer and Servers.

53. McGrath and C&C are liable to AMC for damages and the costs AMC incurs in this suit. Va. Code § 18.2-152.12(A).

## COUNT III:
## VIOLATION OF THE VIRGINIA UNIFORM TRADE SECRET ACT

54. AMC incorporates the foregoing paragraphs.

55. McGrath and C&C acquired AMC's Trade Secrets by improper means.

56. McGrath and C&C knew or had reason to know that they had acquired the Trade Secrets by improper means.

57. McGrath and C&C disclosed or used AMC's Trade Secrets without AMC's consent and used improper means to acquire knowledge of AMC's Trade Secrets.

58. McGrath and C&C disclosed or used AMC's Trade Secrets without AMC's consent and, at the time of the disclosure or use, knew or had reason to know that their knowledge of AMC's Trade Secrets was derived from or through a person who had utilized improper means to acquire the Trade Secrets.

59. AMC has been damaged by McGrath's and C&C's misappropriation of AMC's Trade Secrets.

60. McGrath and C&C have been unjustly enriched by their misappropriation of AMC's Trade Secrets.

61. McGrath and C&C acted willfully and maliciously in misappropriating AMC's trade secrets.

62. McGrath and C&C's actions violate the Virginia Uniform Trade Secrets Act, Va. Code §§ 59.1-336, et *seq.*

63. AMC is entitled to injunctive relief to enjoin McGrath's and C&C's misappropriation of AMC's Trade Secrets. Va. Code § 59.1-337.

64. McGrath and C&C are liable to AMC for damages, including both the actual loss caused by the misappropriation and their unjust enrichment from the misappropriation. Va. Code § 59.1-338(A).

65. McGrath and C&C are liable to AMC for punitive damages. Va. Code § 59.1-338(B).

66. McGrath and C&C are liable to AMC for its reasonable attorneys' fees. Va. Code § 59.1-338.1.

10

## COUNT IV:
## TRESPASS TO CHATTELS

67. AMC incorporates the foregoing paragraphs.

68. McGrath and C&C intentionally used, intermeddled with, and accessed AMC's Computer, Servers, and Trade Secrets without authorization.

69. McGrath and C&C are liable to AMC for damages AMC suffered because of their trespass.

## JURY DEMAND

A trial by jury is demanded for all counts.

## PRAYER FOR RELIEF

WHEREFORE, AMC prays that this Court grant the following relief:

A.  An injunction permanently enjoining McGrath and C&C and all persons who act in concert with one or both of them from:

> 1.  accessing, or attempting to access, AMC's servers or computers;
>
> 2.  using or disclosing AMC's Trade Secrets; and
>
> 3.  using or allowing McGrath to perform any work for C&C in preparing proposals or bids to perform work for the U.S. Department of the Army.

B.  An award of damages in an amount to be shown at trial;

C.  An award of punitive damages;

D.  An award of attorneys' fees and costs; and

E.  Such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

ATLANTIC MARINE CONSTRUCTION
COMPANY, INC.

Anne G. Bibeau, Esq. (VSB #41488)
Ellen F. Bergren, Esq. (VSB #81340)
Vandeventer Black LLP
101 W. Main St., Ste. 500
Norfolk, VA 23510
Tel. 757-446-8600
Fax 757-446-8670
abibeau@vanblk.com
ebergren@vanblk.com

4812-1506-8971, v. 3